THERESA LYNNE MURPHY
11 High St. #201
San Francisco, CA 94114
Tel: (415) 529-2829
Plaintiff in Pro Per

FILED
MAY 0 2 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JSC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THERESA LYNNE MURPHY**<br>        **Plaintiff,**<br><br>        v.<br><br>**THE BANK OF NEW YORK MELLON, AS**<br>**TRUSTEE, FOR CERTIFICATE HOLDERS**<br>**OF STRUCTURED ASSET MORTGAGE**<br>**INVESTMENTS II.,INC., BEAR STEARNS**<br>**ALT-A TRUST, MORTGAGE PASS-THROUGH**<br>**CERTIFICATES, SERIES 2006-2;**<br>**BANK OF AMERICA N.A., AS TRUSTEE, FOR**<br>**CERTIFICATE HOLDERS OF STRUCTURED**<br>**ASSET MORTGAGE INVESTMENT II, INC.,**<br>**MORTGAGE-BACKED CERTIFICATES,**<br>**SERIES 2006-4**<br>        **Defendants.** | CASE NO. **CV 14 2030**<br><br>**COMPLAINT for:**<br>**DECLARATORY JUDGMENT**<br>**28 U.S.C. §§2201-02;**<br>**FRAUD AND FRAUDULENT**<br>**CONCEALMENT 18 U.S.C. §§ 1001, 1021;**<br>**COUNTERFEIT SECURITY 18 U.S.C. § 513;**<br>**LICENSE OR REGISTRATION**<br>**REQUIRED 12 U.S.C. § 5103;**<br>**RES JUDICATA; COLLATERAL ESTOPPEL;**<br>**CANCELLATION OF INSTRUMENTS;**<br>**REMOVAL OF CLOUD ON TITLE CC § 3412;**<br>**U.S. CONSTITUTIONAL RIGHTS UNDER**<br>**5th & 14th AMENDMENTS TO DUE PROCESS.** |

## I.   JURISDICTION

1.)   The real property ("the Property") that is the subject of this Action is located in San Francisco

County, California, and is commonly known as 11 High Street, Unit No. 201, San Francisco, California,

94114; Block 2849; Lot 033.  The Legal Description of the Property is attached as Exhibit "A", and

incorporated by this reference.

| SHORT TITLE:<br>Murphy v. the Bank of New York Mellon, as Trustee, et al | CASE NUMBER: |
|---|---|

2.)   Under Civil Local Rule 3-5(a), the statutory basis for federal jurisdiction is one of Diversity. Plaintiff is a citizen of the state of California. The Bank of New York Mellon, is incorporated and its Principle Place of Business is in the state of New York.  Bank of America N.A., is incorporated and its Principle Place of Business is in the state of Delaware; headquartered in the state ofNorth Carolina.

## II.   INTRADISTRICT ASSIGNMENT

3.)   The basis for assignment to the Northern District of California pusuant to Civil Local Rule 3-5(b), and 3-2(c), lies in the fact that the location of the subject Property is in the City and County of San Francisco, California.

## III.   PARTIES

4.)   At all times relevant to this action, plaintiff, Theresa Lynne Murphy, an individual, has held and now holds, an interest in the Property as Owner of Fee Simple Title. The basis of Plaintiffs' title is the Grant Deed recorded Jan. 9, 2008, in the records of San Francisco County Assessor-Recorder as Document No. 2008-I516250-00, and Judgment Quieting Title dated Jan. 25, 2012, recorded July 24, 2012, as Document No. 2012-J454298-00.

5.)   The Bank of New York Mellon, [extinguished] Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-2, is a New York corporation with its principle place of business located at One Wall Street, New York, N.Y. 10286, and is a national banking association authorized to do business in the state of California.

6.)   Bank of America, N.A., [extinguished] Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage-Backed Certificates, Series 2006-4, is a Delaware corporation with its principle place of business located at 101 S. Tryon Street, #1000, Charlotte, North Carolina, its a national banking association authorized to do business in the state of California.

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:                                                                  COMPLAINT

This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___1___

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| —Murphy v. the Bank of New York Mellon, as Trustee, et al | |

## IV.   STANDING

7.)    The Bank of New York Mellon, as Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-2, [and any party in privity, including agent, nominee, servant, employee, partner, or joint venturer], has No Standing to appear before the Court because it was finally determined on Jan. 25, 2012, by the Honorable Harold Kahn, Judge of the Superior Court of California, in and for the County of San Francisco, that the Bank of New York Mellon, as Trustee - has no right, title, estate, lien or interest in the Property adverse to plaintiffs'.  Judgment Quieting Title was recorded July 24, 2012, in the official records of the San Francisco County Assessor-Recorder, as Document No. 2012-J454298-00.   A true and correct copy of the Judgment Quieting Title to the Property is attached as Exhibit No. 1, and incorporated herein by reference.

8.)    The Bank of America, N.A., as Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage-Backed Certificates, Series 2006-4, [and any party in privity, including agent, nominee, servant, employee, partner, or joint venturer], has No Standing to appear before the Court because it was finally determined on Jan. 25, 2012, by the Honorable Harold Kahn, Judge of the Superior Court of California, in and for the County of San Francisco, that the Bank of America, N.A., as Trustee - has no right, title, estate, lien or interest in the Property adverse to plaintiffs'. Judgment Quieting Title was recorded July 24, 2012, in the official records of the San Francisco County Assessor-Recorder, as Document No. 2012-J454298-00.

## V.   INTRODUCTION

9.)    The Legal Title of the Bank of New York Mellon, as Trustee, and the Bank of America, N.A., as Trustee, and any interest of parties that were in privity with them, were extinguished in the valid Judgment Quieting Title dated Jan. 25, 2012. Neither Trustee, nor any party in privity, can claim any right, title, estate, lien or interest in the Property adverse to plaintiffs' after that date. No Appeal of the Judgment

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:                                                          COMPLAINT

This page may be used with any Judicial Council form or any other paper filed with the court.                    Page ___2___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]                    **ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper                    CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

1 Quieting Title was filed. The statutory waiting period of 6 months passed with no person or entity claiming

2 any interest in the Property. The Instruments that are on record cast a cloud on plaintiffs' title and should be

3 removed by remedy of cancellation.

4

### VI. DECLARATORY JUDGMENT, 28 U.S.C. §§2201-02

5

6 10.) Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the

7 same were fully set forth herein.

8 11.) A justiciable controversy exists regarding plaintiffs U.S. Constitutional rights under 5th and 14th

9 Amendments to protect Property, prevent deprivation of Property, and due process, pursuant to a valid

10 Judgment Quieting Title. A Declaratory Judgment is appropriate because it will terminate the controversy

11 giving rise to proceeding, involving issues of law on undisputed facts, and supported by self-authenticating

12 evidence. Rule 57 governs the procedure for obtaining a declaratory judgment under 28 U.S.C. §§2201-02.

13 12.) Plaintiff is entitled to, and respectfully requests a Declaration for a Court-Ordered Cancellation

14 of Instrument No. 2005-I102707-00, recorded Dec. 29, 2005, in the official records of the San Francisco

15 County Assessor-Recorder, pursuant to Judgment Quieting Title to the real Property commonly known as

16 11 High Street, Unit 201 in San Francisco, entered in favor of Theresa Lynne Murphy, and against the Bank

17 of New York Mellon, as Trustee. This deed of trust continues to cloud plaintiffs' title 2 years after the valid

18

19 Judgment Quieting Title and should be removed by remedy of cancellation.

20 13.) Plaintiff is entitled to, and respectfully requests a Declaration for a Court-Ordered Cancellation

21 of Instrument No. 2005-I102708-00, recorded Dec. 29, 2005, in the official records of the San Francisco

22 County Assessor-Recorder, pursuant to Judgment Quieting Title to the real Property commonly known as

23 11 High Street, Unit 201 in San Francisco, entered in favor of Theresa Lynne Murphy, and against the Bank

24 of America, N.A., as Trustee. This deed of trust continues to cloud plaintiffs' title 2 years after valid

25 Judgment Quieting Title and should be removed by remedy of cancellation.

26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:  COMPLAINT

27 This page may be used with any Judicial Council form or any other paper filed with the court.  Page ___3___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

14.) Plaintiff respectfully requests from the Court, a Declaration of status, that all parties in privity with the Bank of New York Mellon, as Trustee, including any agent, nominee, servant, employee, partner, or joint venturer - had no right, title, estate, lien or interest in the Property, after date of Judgment Quieting Title, Jan. 25, 2012, when said Trustees' legal title was extinguished.

15.) Plaintiff respectfully requests a Declaration of status, that the Instrument described in ¶ 12, did not revert back to Pro30 Funding because their 2006 sale of the DOT precludes them from retaining any purported interest to reassign. The Chain of Title is broken after valid Judgment Quieting Title against successor, the Bank of New York Mellon, as Trustee. MERS as nominee for Pro30 Funding, had no right, title, estate, lien or interest in the Property to re-assign the deed of trust. A true and correct copy of verified Chain of Title is attached as Exhibit No. 2, and incorporated herein by reference.

16.) Plaintiff respectfully requests a Declaration of status, that the Bank of New York Mellon, as Trustee, and any party in privity, had no right, title, estate, lien or interest in the Property to assign to any successor in interest after said Trustees' legal title was finally extinguished by the Judgment Quieting Title. Plaintiff requests a Court-Ordered Cancellation of Corporate Assignment of Deed of Trust, Instrument No. 2012-J571666-00, recorded Dec. 26, 2012, in the official records of the San Francisco County Assessor-Recorder. The fraudulent assignment back to extinguished Trustee, Bank of New York Mellon, is invalid, and all documents issuing from it are equally invalid, pursuant to Judgment Quieting Title entered in favor of Theresa Lynne Murphy, and against the Bank of New York Mellon, as Trustee. A true and correct copy of the false Corporate Assignment of Deed of Trust is attached as Exhibit No. 3, and incorporated herein.

V. FRAUD AND FRAUDULENT CONCEALMENT 18 U.S.C. §§ 1001, 1021

17.) Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the same were fully set forth herein.

18.) Plaintiff respectfully requests a Declaration of status, that the Bank of New York Mellon is not

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers):*

COMPLAINT

This page may be used with any Judicial Council form or any other paper filed with the court.

Page ____ 4

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201. 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

1

## VI  COUNTERFEIT SECURITY 18 U.S.C. § 513

2   20.)   Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the

3   same were fully set forth herein.

4   21.)   Plaintiff respectfully requests a Declaration of status, that Bear Stearns Asset-Backed Securities,

5   Bear Stearns Alt-A Trust Mortgage Pass-Through Certificates, Series 2006-2, is a counterfeit security.

6

7   Section 513(b) provides in pertinent part that it is unlawful to make, receive, possess, sell or otherwise

8   transfer an implement designed for or particularly suited for making a counterfeit or forged security with

9   the intent that it be so used. The United States Security and Exchange Commission has clearly attested to

10   the fact that no filings under that name have been received by the Commission, giving the Court irrefutable

11   evidence that it is a counterfeit security; no such security exists.

12   ## VII.    LICENSE OR REGISTRATION REQUIRED 12 U.S.C. § 5103

13   22.)   Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the

14   same were fully set forth herein.

15   23.)   Plaintiff respectfully requests a Declaration of status, that Pro30 Funding was not a licensed

16   lender, and not a corporation "organized and existing under the laws of the state of California", at the time

17   it was written on page one of the 1st and 2nd deeds of trust - therefore, in violation of 12 U.S.C. § 5103

18

19   requirement for license or registration of lenders: "Subject to the existence of a licensing or registration

20   regime, as the case may be, an individual may not engage in the business of a loan originator without first

21   (1) obtaining, and maintaining annually (A) a registration as a registered loan originator; or (B) a license

22   and registration as a State-licensed loan originator; and (2) obtaining a unique identifier". And, it is in

23   violation of Business and Professions Code § 17910.5(a): "No person shall adopt any ficticious business

24   name which includes 'Corporation', 'Corp.', 'Incorporated', 'Inc.', or 'LLC', unless that person is a

25   corporation organized pursuant to the laws of this state or some other jurisdiction".

26   *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:                                                                      COMPLAINT

27   This page may be used with any Judicial Council form or any other paper filed with the court.

Page _ 6

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

1    A nonexistent corporation and nonexistent lender, has no authority to assign a nonexistent interest

2 to a nonexistent trust! MERS as nominee for Pro30 Funding, had no right, title, estate, lien or interest in the

3 Property to assign, rendering Corporate Assignment of Deed of Trust void ab initio; it passed no title or

4 security interest back to the Bank of New York Mellon, as Trustee. Corporate Assignment of Deed of Trust

5 was not a harmless error - its' recordation is prejudicial, and substantially affects plaintiffs' Property Rights.

6
7 Pro30 Funding, and MERS, knew or should have known, Pro30 was not a corporation, and not licensed -

8 according to the 2nd deed of trust, MERS was located at the same address as Pro30 Funding, 88 Rowland

9 Way, Ste. 200, Novato California; the MERS offficer was also an employee of Pro30 Funding. Said

10 Assignment casts a cloud on plaintiffs' title and should be removed by remedy of cancellation. There can be

11 no "Corporate Assignment" where no corporation exists; to claim the right of a corporation, it must be

12 organized and existing under the law. Plaintiff respectfully requests a Declaration of status, that MERS had

13 no right, title, estate, lien or interest in the Property as nominee for a nonexistent corporation and

14 nonexistent lender, and had no authority to assign a nonexistent interest to a nonexistent trust.

15    The Certificate of No Record [of] Corporation dated Feb. 15, 2013, from Secretary of State Debra

16 Bowen, establishes as undisputable, the fact that: "...a diligent search has been made in the corporate files

17 of this office and that there is no record of a California or foreign corporation, active or inactive, of the

18 name: PRO30 FUNDING". A true and correct copy of the Certificate of No Record is attached as Exhibit
19
No. 5 , and incorporated herein by reference.
20

21    The License from the Department of Corporations, Certified by California Corporations

22 Commissioner Preston Dufauchard, establishes as undisputable, the fact that: ENMM, Inc., was the real

23 name of the corporation, that PRO30 Funding was a ficticious dba, and was not licensed until Aug. 15,

24 2006 - 8 months after the deeds of trust were recorded on Dec. 29, 2005. A true and correct copy of the

25 certified license is attached as Exhibit No. 6 , and incorporated herein by reference.

26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:    COMPLAINT

27 This page may be used with any Judicial Council form or any other paper filed with the court.    Page ___7___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

1   The 1st and 2nd deeds of trust, establish that Pro30 Funding falsely claimed to be a licensed lender;

2   falsely claimed to be a corporation organized and existing under the laws of the state of California; that

3   nominee MERS worked in the same office with Pro30 Funding; that plaintiff never executed said deeds of

4   trust, and was never obligated to repay. A true and correct copy of the 1st deed of trust recorded as

5   Document No. 2005-I102707-00 is attached as Exhibit No. 7, and incorporated herein by reference. A true

6   and correct copy of the 2nd deed of trust recorded as Document No. 2005-I102708-00 is attached as

7   Exhibit No. 8, and incorporated herein by reference.

8

9   VIII.   RES JUDICATA AND COLLATERAL ESTOPPEL BAR RELITIGATION

10   24.)   Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the

11   same were fully set forth herein.

12   25.)   The Court Must apply the Doctrine of Res Judicata (Claim Preclusion), if all three elements are

13   satisfied:   (1)   Prior litigation resulted in a final Judgment Quieting Title, in which identical claims

14   were raised (or could have been raised), regarding any legal title of the Bank of New York

15   Mellon, as Trustee, and the Bank of America N.A., as Trustee. And regarding any equitable

16   title of the certificate holders of the trusts, and re any security interest of the deeds of trust -

17   sharing a common nucleus of operative fact.

18   (2)   The parties in this litigation are identical to the parties in the original litigation for the

19   Judgment Quieting Title, or in privity. The identical trustee's, the Bank of New York Mellon,

20   as Trustee, and the Bank of America N.A., as Trustee.

21   The identical trust re the Bank of New York Mellon, as trustee, for Certificate holders of

22   "Structured Asset Mortgage Investments II, Inc., Bear Stearns Alt-A Trust, Mortgage Pass-

23   Through Certificates, Series 2006-2", as in Plaintiffs' Judgment Quieting Title. A party is

24

25   considered to be in privity with a party in the original litigation if the party and the nonparty

26   *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:   COMPLAINT

27   This page may be used with any Judicial Council form or any other paper filed with the court.   Page ___8___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

1  have an agency relationship, which was the relationship of MERS, "solely as nominee"

2  pursuant to the deeds of trust.

3  (3)  There was a final Judgment Quieting Title on the merits in the original litigation. Res

4  Judicata bars claims of title to the Property that were previouly litigated.

5

6  26.)  The Court Must apply Doctrine of Collaterral Estoppel (Issue Preclusion), if all 3 elements are

7  satisfied:  (1)  The identical issue regarding title to the Property was brought before the court.

8  (2)  The issue was actually litigated in the first judicial proceeding, the Bank of New

9  York Mellon, as Trustee, and the Bank of America N.A., as Trustee, had a full and fair

10  opportunity to litigate the issue.

11  (3)  The issue was necessarily decided and rendered as a necessary part of the courts' final

12  and valid Judgment Quieting Title.

13  27.)  Plaintiff quieted title against the proper trustees. In Action No.CGC-08-473479, filed March 19,

14  2008, MERS verified that J.P. Morgan Chase Bank, was the Trustee for Certificate Holders of Structured

15  Asset Mortgage Investments II, Inc, Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series

16  2006-2, re 1st DOT recorded as Document 2005-I102707-00 - and that LaSalle Bank National Association,

17

18  was Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc, Mortgage-Backed

19  Certificates, Series 2006-4 re 2nd DOT recorded as Document 2005-I102708-00. MERS action to quiet

20  title was dismissed without prejudice, because the Bank of New York Mellon officially took over J.P.

21  Morgans' Trust Dept. on Dec. 4, 2006, so they were not the Trustee on date the complaint was filed. Bank

22  of America N.A. officially took over LaSalle Bank, N.A., October 1, 2007, so they were not the Trustee on

23  date the complaint was filed. They were not real parties in interest on date Action No. CGC-08-473479 was

24  filed on March 19, 2008. MERS never re-filed to quiet title in the names of the successor trustees. Murphy

25  filed an action to quiet title against the successor Trustees which resulted in the Judgment Quieting Title.

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:

COMPLAINT

27  This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___ 9

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| ⌐Murphy v. the Bank of New York Mellon, as Trustee, et al | |

28.)     SEC Form 8-K, Sealed and Signed by Curt Francisco, July 22, 2013, including Amended Pooling and Servicing Agreement, page 274, Certifying that 1st Deed of Trust for $833,250.00 was in the Schedule of Mortgages, establishes as undisputable, the fact that Judgment Quieting Title was against the proper Trustee, thereby it forever extinguished the legal title of the Bank of New York Mellon, as Trustee. A true and correct copy of Form 8-K, pg. 274 is attached as Exhibit No. 9, and incorporated by reference.

29.)     SEC Form 8-K, page 2 of 5, Certifying that, "Structured Asset Mortgage Investments II Inc., caused the issuance and sale of Bear Stearns Asset Backed Securities, Bear Stearns Alt-A Trust Mortgage Pass-Through Certificates, Series "2006-1" among Bear Stearns Asset Backed Securities I LLC...", establishes as undisputable, the fact that Series "2006-2" was NOT sold, pursuant to PSA, dated as of March 1, 2006. The second paragraph Certifying that on October 6, 2006, "the parties executed an Amended and Restated PSA among "Structured Asset Mortgage Investment II Inc., as depositor...and the Bank of New York as successor to JPMorgan Chase Bank, N. A., as Trustee, establishes as undisputable, the fact that the Bank of New York was successor Trustee to JPMorgan Chase Bank, N. A.. A true and correct copy of Form 8-K, pg. 2 of 5, is attached as Exhibit No. 10, and incorporated by reference.

30.)     SEC Form 10-K, Certifying the exact name of the issuing entity as specified in its charter is, "Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2", and the exact name of depositor as specified in its charter is, "Certificate Holders of Structured Asset Mortgage Investments II, Inc.", establishes as undisputable, the fact that the Bank of New York Mellon as Trustee for said Trust, was the exact correct verbage in valid Judgment Quieting Title - thereby extinguishing its' legal title. A true and correct copy of Form 10-K, is attached as Exhibit No. 11, and incorporated by reference.

31.)     A trust is not a separate legal entity that can hold property. In contrast to a corporation, which the law often deems as its own person, a trust is not a person but rather a "fiduciary relationship with respect to property." (Ziegler v. Nickel, 64 Cal. App. 4th 545, 548 (1998).) The California Court of Appeals

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers):*                                                      COMPLAINT

This page may be used with any Judicial Council form or any other paper filed with the court.                    **Page ___10___**

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

1  held that an arbitrator's judgment against a trust could not be enforced when the judgment was entered

2  against a trust, as opposed to its trustees. This decision was based on the case law above, the fact that a

3  trust is not an entity; it cannot sue or be sued, or hold title to property. Also, the Court noted that "a claim

4  based on a contract entered into by the trustee in the trustee's representative capacity...may be asserted

5
6  against the trust by proceeding against the trustee in the trustee's representative capacity...". (Probate Code

7  §18004)A trust does not fall within the statutory definition of a judgment debtor that is defined as "the

8  person against whom a judgment is rendered." (CCP § 680.250)  The Court sqaurely held that the mistitling

9  of the judgment, in the trust's name rather than in the name of the trustee of the trust, rendered it a nullity,

10  thus the importance of corretly naming the trustee of the trust in a lawsuit. Probate Code § 18000 provides

11  as follows: "Unless otherwise provided in the contract or in this chapter, a trustee is not personally liable on

12  a contract properly entered into in the trustee's fiduciary capacity in the course of administration of the trust

13  unless the trustee fails to reveal the trustee's representative capacity or identify the trust in the contract."

14       The Court must apply the Doctrine of Res Judicata and Collateral Estoppel based on undisputable

15  facts that care was taken that the Judgment Quieting Title was against the proper Trustees, to ensure the

16  proper parties were named to be binding as to all parties, thereby extinguishing the legal title against the

17  Property. California law allows for nominee MERS to foreclose, however, an action to quiet title must be

18  brought against the actual Trustee of the Trust to extinguish its legal title - not against a nominee on record.

19
20       IX.    REMOVAL OF CLOUD ON TITLE AND CANCELLATION OF INTRUMENTS, CC § 3412

21       32.)   Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the

22  same were fully set forth herein.

23       33.)   Under Civil Code § 3412: "A written instrument, in respect to which there is a reasonable

24  apprehension that if left outstanding it may cause seriour injury to a person against whom it is void or

25  voidable, may, upon his application, be so adjudged, and ordered to be delivered up or cancelled."

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:                                                                                    COMPLAINT

27  This page may be used with any Judicial Council form or any other paper filed with the court.          Page ___11___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
| Murphy v. the Bank of New York Mellon, as Trustee, et al | |

34.)   There IS a reasonable apprehension that the instruments that purport to be deeds of trust presently in existence, if left outstanding, or in the chain of title, will cause serious injury to plaintiff by casting a cloud on plaintffs' title, and should be removed by remedy of cancellation.

35.)   The Property is located in San Francisco County; the instruments were recorded in San Francisco County. The three written instruments sought to be cancelled in this cause of action should be cancelled and removed from the records of the San Francisco County Assessor-Recorder are: (1) Instrument No. 2005-I102707-00; (2) Instrument No. 2005-I102708-00; and (3) Instrument No. 2012-J571666-00.

36.)   In seeking the remedy of Cancellation of Instruments to remove the cloud on title, plaintiff relies on the Judgment Quieting Title in the official records of the San Francisco County Assessor-Recorder, as Document No. 2012-J454298-00.

## X.   U.S. CONSTITUTION, 5th and 14th AMENDMENTS

37.)   Plaintiff incorporates by reference each and every one of the preceeding paragraphs as if the same were fully set forth herein.

38.)   The Fifth Amendment, provides in pertinent part that "...nor be deprived of life, liberty, or property, without due process of law..." Due process would be denied if valid Judgment Quieting Title against the proper Trustee's is not upheld by the Court, and the Instruments not cancelled, but left outstanding to cause serious injury to plaintiff against whom they are void.

39.)   The Fourteenth Amendment Due Process Clause and Equal Protection clause (Section 1), expressly declares no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...". Justice would not be served if plaintiff were to be deprived of her Property after valid Judgment Quieting Title. No law allows for title to revert back to an originating lender 8 years after it was sold to a successor. No law allows for an agent, nominee, or any person in privity, to retain any

*(Required for verified pleading) The items on this page stated on information and belief are (specify item numbers, not line numbers):*
COMPLAINT

This page may be used with any Judicial Council form or any other paper filed with the court.

Page __12__

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper

**Escrow No.:** 05-143308-CG
**Locate No.:** CAFNT0938-0938-0014-0000143308
**Title No.:** 05-143308-JJ

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

Condominium Unit No. 201, Lot No. 33, as shown upon the Condominium Map and diagrammatic floor plan entitled "Map of No. 11 High Street, a Condominium" which was filed for record on February 21, 1979 in Condominium Map Book 10, at Pages 92 through 97, inclusive, in the Office of the Recorder of the City and County of San Francisco, State of California (referred to herein as "the Map"), and as further defined in the No. 11 High Street Declaration of Covenants, Conditions and Restrictions Establishing a Plan of Condominium Ownership recorded on February 28, 1979 in Book C734, Page 176 and following, Official Records of the City and County of San Francisco, State of California (referred to herein as "the Declaration").

Excepting therefrom, any portion of the common area lying within said Unit.

Also excepting therefrom:

(a) Easements through said Unit, appurtenant to the Common Area and all other Units, for support and repair of the common area and all other units.

(b) Easements, appurtenant to the common area for encroachment upon the air space of the Unit by those portions of the common area located within the Unit.

PARCEL B:

An undivided 0.125% interest in and to the Common Area as shown on the Map and defined in the Declaration, excepting therefrom the following:

(a) Exclusive easements, other that those shown in Parcel "C" herein, as shown on the Map and excepting by Grantor to units for use as defined in the Declaration and

(b) Non-exclusive easements appurtenant to all units for ingress and egress, support, repair and maintenance.

PARCEL C:

The following easements appurtenant to Parcel A above as set forth and defined in the Declaration:

(a) The exclusive easement to use the Balcony area(s) designated as Balcony 201 on the Map.

PARCEL D:

A non-exclusive easement appurtenant to Parcel A above for support, repair and maintenance, and for ingress and egress through the Common Area in accordance with California Civil Code Section 1361(a).

PARCEL E:

Encroachment easements appurtenant to the Unit in accordance with the provisions of the Declaration.

Initials: _____

**RECORDING REQUESTED BY**
**AND**
**WHEN RECORDED MAIL TO :**

THERESA MURPHY
11 HIGH ST. # 201
SAN FRANCISCO CA
94114

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
**DOC- 2012-J454298-00**
Tuesday, JUL 24, 2012 12:21:12
Ttl Pd $23.00    Rcpt # 0004453363
**REEL K695   IMAGE 0389**
ofa/DM/1-4

## TITLE ( S )

QUIET TITLE:
JUDGMENT AGAINST DEFENDANTS
BANK OF AMERICA AND BANK OF
NEW YORK MELLON, AS TRUSTEES

11 HIGH STREET # 201
SAN FRANCISCO CA 94114

BLOCK 2849   LOT 33

Separate page pursuant to Gov't code 27361.6

**FILED**

San Francisco County Superior Court

JAN 2 7 2012

CLERK OF THE COURT

BY: _____
 Deputy Clerk

CALIFORNIA SUPERIOR COURT, UNLIMITED JURISDICTION

COUNTY OF SAN FRANCISCO

LAW AND MOTION DEPARTMENT

| | |
|---|---|
| THERESA LYNNE MURPHY<br><br>    Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO COUNTY ASSESSOR RECORDER, PHIL TING; JP MORGAN CHASE BANK, as Trustee; LASALLE BANK NATIONAL ASSOCIATION, as Trustee; THE BANK OF NEW YORK MELLON, as Trustee; BANK OF AMERICA NA, as Trustee; PRO30 FUNDING, ITS SUCCESSORS and/or ASSIGNS; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as Nominee for PRO30 FUNDING, ITS SUCCESSORS and/or ASSIGNS; 11 HIGH STREET CONDOMINIUM ASSOCIATION; and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest, in the Property adverse to Plaintiff's title, or any cloud on Plaintiff's title; and Does 1-100, Inclusive, et al.<br><br>    Defendants. | No. CGC-11-509264<br><br>**JUDGMENT AGAINST DEFENDANTS BANK OF AMERICA AND THE BANK OF NEW YORK MELLON, AS TRUSTEES** |

JUL 2 4 2012

BOWMAN LIU

JUDGMENT

1

2          The Court, having granted plaintiff's motion for Summary Judgment on January 25,

3     2012 as to defendants BANK OF AMERICA, NA as Trustee for Certificate Holders of

4     Structured Asset Mortgage Investments II, Inc., Mortgage-Backed Certificates, Series 2006-

5     4, and THE BANK OF NEW YORK MELLON, as Trustee for Certificate Holders of

6     Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-

7     Through Certificates, Series 2006-2, now enters judgment as follows:

8          Judgment quieting title as to the real property commonly known as 11 High Street,

9     Unit 201 in San Francisco is entered in favor of plaintiff THERESA LYNNE MURPHY and

10    against defendants BANK OF AMERICA, NA as Trustee for Certificate Holders of

11    Structured Asset Mortgage Investments II, Inc., Mortgage-Backed Certificates, Series 2006-

12    4, and defendant THE BANK OF NEW YORK MELLON, as Trustee for Certificate Holders

13    of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage

14    Pass-Through Certificates, Series 2006-2 and determining that these defendants have no

15    right, title, estate, lien or interest in the property adverse to plaintiff. .

16

17    Dated:  1\25\12                        By:  _____
                                                    The Honorable Harold Kahn
18                                                  Judge of the Superior Cour

19

20

21

22

23

24

25

26

27

28                                          2
                                    **JUDGMENT**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| ├ Murphy vs. The Bank of New York Mellon, as Trustee, et al. | |

1                                    CHAIN OF TITLE

2   12/21/2005 - Clyde Nathan Smith executed the Deeds of Trust

3   12/23/2005 - Smith Delivered Possession to Theresa L. Murphy - Conveyance for Consideration.
4               Actual/Constructive Notice, unrecorded owner in possession. Title Perfected.

5   12/29/2005 - 00:00:01 - Determination Date, Court-Ordered Grant Deed to Theresa L. Murphy, 01/08/2008
6               15:66:13 - Recordation of 1st Deed of Trust, Doc. No. 2005-I102707-00
                15:66:18 - Recordation of 2nd Deed of Trust, Doc. No. 2005-I102708-00
7               BREAK IN THE CHAIN OF TITLE
                Pro30 Funding, a California Corporation, organized and existing under the laws of the state
8               of California", is a nonexistent corporation, and unlicensed lender.
                Pursuant to UCC-9-309, a security interest must be perfected.
9               "A security interest becomes enforceable against collateral as soon as it attaches.
10              Attachment of a security interest does not ensure that a secured party's interest in the
                collateral will be superior to the interest of other lienors or subsequent buyers, lessees, or
11              licensee. In general, to obtain priority over such other claimants, the security interest must be
                perfected." For real property, the security instrument is perfected upon recordation.
12              Murphy's Perfection of Title upheld by Court Ordered Grant Deed with Determination Date
13              of Dec. 29, 2005, establishing first-in-line priorty over unenforceable Deeds of Trust.
                No exceptions to implied covenants were carved out or expressly restrained under CC § 1113.

14  01/09/2008 - Admissible Evidence: (1) Certified Court-Ordered Grant Deed, recorded Jan. 9, 2008, in the
15              Office of the San Francisco County Assessor-Recorder, as Document No. 2008-I516250-00.
                (2) Certified Judgment by the Hon. William Gargano with Determination Date of 12/29/2005;
16              (3) Ruling of the Hon. Judge Busch upholding the Judgment by the Hon. William Gargano;
                (4) Certification of No Record of Corporation from CA Secretary of State, executed
17              02/15/2013; (5) Certificate of Search from CA. Dept. of Business Oversight; (6) 1st Deed of
18              Trust; (7) 2nd Deed of Trust;

19  03/01/2006 - Cut-off Date, for Certificate Holders of Structured Assett Mortgage Investments II, Inc.,
                Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2
20  03/31/2006 - Closing Date, for Certificate Holders of Structured Assett Mortgage Investments II, Inc.,
21              Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2
    03/01/2006 - Cut-off Date, for Certificate Holders of Structured Assett Mortgage Investments II, Inc.,
22              Mortgage Backed Security, Series 2006-4
    03/31/2006 - Closing Date, for Certificate Holders of Structured Assett Mortgage Investments II, Inc.,
23              Mortgage Backed Security, Series 2006-4

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:                                                                      CHAIN OF TITLE

27  This page may be used with any Judicial Council form or any other paper filed with the court.        Page __1__

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]                    ADDITIONAL PAGE
                              Attach to Judicial Council Form or Other Court Paper                    CRC 201, 501

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Murphy vs. The Bank of New York Mellon, as Trustee, et al. | CV-13-2820-JST |

1  2  3  4  5
Admissible Evidence: (8) Certified Amended Pooling and Servicing Agreement, Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2, Filing Date 10/10/2006, CIK No. 0001353623; (9) Certified Form 10-K, Filing Date 03/29/2007, CIK No. 001357833; (10) Certified Form 15, Notice of Suspension of Duty to File Reports, Last Filing 01/26/2007; (11) Certified Pooling and Servicing Agreement, Certificate Holders of Structured Assett Mortgage Investments II, Inc.,Mortgage Backed Security, Series 2006-4, Filing Date 03/30/2006, CIK No. 0001356882; (12) Certified Form 10-K, for 2006; (13) Certified Form 15, Notice of Suspension of Duty to File Reports, Last Filing Date 01/30/2007;

6  7  8
01/27/2012 - JUDGMENT QUIETING TITLE against the Bank of New York Mellon, as Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-2, extinguished 1st Deed of Trust recorded Dec. 29, 2005, as Document No. 2005-I102707-00.

9  10  11
Judgment Quieting Title against the Bank of America, N.A., as Trustee, for Certificate Holders of Structured Asset Mortgage Investments II, Inc., Mortgage Backed Securities, Series 2006-4, extinguished 2nd Deed of Trust recorded Dec. 29, 2005, as Document No. 2005-I102708-00.

12  13
07/24/2012 - Admissible Evidence: (14) Certified Judgment Quieting Title recorded July 24, 2012, as Document No. 2012-J454298-00, in the Office of the San Francisco County Assessor-Recorder.

14  15
12/26/2012 - BREAK IN THE CHAIN OF TITLE - Corporate Assignment of Deed of Trust recorded Dec. 26, 2012 as Document No. 2012-J571666-00 in the Office of the San Francisco County Assessor-Recorder to a non-existent trust.

16  17
Admissible Evidence: (15) ATTESTATION from SEC that no trust by that name filed with the Commission.

18

19
VERIFICATION

20
I declare under penalty of perjury under the laws of the

21
United States that the foregoing is true and correct.

22

23  24
May 1, 2014

Theresa Lynne Murphy

25

26
*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:

CHAIN OF TITLE

27
This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___2___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

RECORDING REQUESTED BY:

SUPERIOR COURT OF SAN FRANCISCO

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS:
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO

THERESA LYNNE MURPHY
11 HIGH ST. # 201
SAN FRANCISCO CA. 94114
415 - 814 - 8143

Order No..:
Escrow No:

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2008-I516250-00
Wednesday, JAN 00, 2008 13:28:53
Ttl Pd $18.00   Rcpt # 0003308543
REEL J553 IMAGE 0384
                    oks/KC/1-4

A.P.N.: 2849 - 033
       BLOCK 23F
11 HIGH ST. #201 SAN FRANCISCO

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

DOCUMENTARY TRANSFER TAX IS $ N/A          = N/A
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] unincorporated area       [ ] city of                    AND

FOR A VALUABLE CONSIDERATION receipt of which is hereby acknowledged,

CLYDE NATHAN SMITH, A SINGLE MAN

hereby GRANT(S) to

THERESA LYNNE MURPHY, A SINGLE WOMAN
the following described real property in the  CITY OF SAN FRANCISCO
County of SAN FRANCISCO          , State of California:

SEE EXHIBIT "A" LEGAL DESCRIPTION ATTACHED HERETO
AND MADE A PART HEREOF.

Dated: JAN. 8, 2008

FOR

CLYDE NATHAN SMITH
Gordon Park-Li
Clerk of the Superior Court

STATE OF CALIFORNIA
COUNTY OF _____  }SS.
On _____ before me, _____ (insert name) Notary Public,
personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.
WITNESS my hand and official seal.

Signature _____                  (This area for official notarial seal)

MAIL TAX STATEMENTS AS DIRECTED ABOVE

CHAIN OF TITLE PG. 3

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of San Francisco

On January 8, 2008 before me, Barbara M. Compton, Notary Public

personally appeared Gordon Park-Li

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Barbara M Compton_

Signature of Notary Public

Place Notary Seal Above

BARBARA M. COMPTON
Commission # 1670362
Notary Public - California
San Francisco County
My Comm. Expires May 26, 2010

―――――――――― OPTIONAL ――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: Grant Deed

Document Date: January 8, 2008          Number of Pages: 3

Signer(s) Other Than Named Above: Gordon Park-Li, for Clyde Nathan Smith, per court order, case # CGC-07-467019

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

*Top of thumb here*

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

*Top of thumb here*

©2007 National Notary Association • 9350 De Soto Ave., P.O.Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

SAN FRANCISCO,CA                     Page 2 of 4                    Printed on 4/3/2013 11:13:25 PM
Document: DD 2008.516250

CHAIN OF TITLE PG. 4

Escrow No.: 05-143388-CG
Locate No.: CAFNT0938-0938-0014-0000143308
Title No.: 05-143308-JJ

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO,
STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

Condominium Unit No. 201, Lot No. 33, as shown upon the Condominium Map and diagrammatic floor plan entitled "Map of
No. 11 High Street, a Condominium" which was filed for record on February 21, 1979 in Condominium Map Book 10, at
Pages 92 through 97, inclusive, in the Office of the Recorder of the City and County of San Francisco, State of California
(referred to herein as "the Map"), and as further defined in the No. 11 High Street Declaration of Covenants, Conditions
and Restrictions Establishing a Plan of Condominium Ownership recorded on February 28, 1979 in Book C734, Page 176
and following, Official Records of the City and County of San Francisco, State of California (referred to herein as "the
Declaration").

Excepting therefrom, any portion of the common area lying within said Unit.

Also excepting therefrom:

(a) Easements through said Unit, appurtenant to the Common Area and all other Units, for support and repair of the
common area and all other units.

(b) Easements, appurtenant to the common area for encroachment upon the air space of the Unit by those portions of the
common area located within the Unit.

PARCEL B:

An undivided 0.125% interest in and to the Common Area as shown on the Map and defined in the Declaration, excepting
therefrom the following:

(a) Exclusive easements, other that those shown in Parcel "C" herein, as shown on the Map and excepting by Grantor to
units for use as defined in the Declaration and

(b) Non-exclusive easements appurtenant to all units for ingress and egress, support, repair and maintenance.

PARCEL C:

The following easements appurtenant to Parcel A above as set forth and defined in the Declaration:

(a) The exclusive easement to use the Balcony area(s) designated as Balcony 201 on the Map.

PARCEL D:

A non-exclusive easement appurtenant to Parcel A above for support, repair and maintenance, and for ingress and egress
through the Common Area in accordance with California Civil Code Section 1361(a).

PARCEL E:

Encroachment easements appurtenant to the Unit in accordance with the provisions of the Declaration.

Initials: _____

CHAIN OF TITLE P6.5

B01008                          Ownership History                          7/17/2013

Vol 20 Apn 2849 _ 033 _ Location 11 HIGH ST 201

Type options, Press Enter.
  1=OwnerInfo 2=Retire 3=Copy 4=Delete 5=Retire&Copy(Prtl) 6=Retire&Copy(100%)
O Names              Percent  Type Mail       DateofVal  Effective  Retire
_ MURPHY THERESA LYNN 100.0000 *ALL MAIL_____ 12/29/2005 1/09/2008 99/99/9999
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____
_ _____ _____ ____ _____ _____ _____ _____

F3=Exit/Save, Options: 1=Owner Book 2=Retire 3=Copy 4=Delete w/ Value 5=Reti

9 に 12 月 21 町 80

CHAIN OF TITLE P6.6

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING

[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 0013268206

San Francisco Assessor-Recorder
D. Hoa Nguyen, Acting Assessor-Recorder
DOC- 2012-J571666-00
Check Number 0632/0855
Wednesday, DEC 26, 2012 15:09:50
Ttl Pd    $18.00    Rcpt # 0004583909
REEL K800   IMAGE 0424
                     ogi/AK/1-1

## CORPORATE ASSIGNMENT OF DEED OF TRUST

CONTACT JPMORGAN CHASE BANK, N.A. FOR THIS INSTRUMENT 780 KANSAS LANE, SUITE A, MONROE, LA 71203, TELEPHONE # (866) 756-8747, WHICH IS RESPONSIBLE FOR RECEIVING PAYMENTS.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRO30 FUNDING, ITS SUCCESSORS AND ASSIGNS PO BOX 2026, FLINT, MI, 48501 by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to THE BANK OF NEW YORK MELLON, F/K/A THE BANK OF NEW YORK, AS SUCCESSOR-IN-INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITIES, BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-2, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by CLYDE NATHAN SMITH and recorded on 12/29/2005 as Instrument # 2005-I102707-00, in Book J046, Page 0650 in the office of the SAN FRANCISCO County Recorder, CA.

Property is commonly known as: 11 HIGH STREET #201, SAN FRANCISCO, CA 94114.

Dated on  10 / 10 /2012 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRO30 FUNDING, ITS SUCCESSORS AND ASSIGNS

By: 

ASST. SECRETARY

## ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On  10 / 10 /2012 (MM/DD/YYYY), before me appeared _____, to me personally known, who did say that he/she/they is/are the ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PRO30 FUNDING, ITS SUCCESSORS AND ASSIGNS and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

Helen P Tyks
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS 17933828 — EMC CJ4256096  MIN 100171905120008553 MERS PHONE 1-888-679-6377  T0912102013  [C]
FRMCAI

*17933828*



# UNITED STATES OF AMERICA

SECURITIES AND EXCHANGE COMMISSION

# **ATTESTATION**

I HEREBY ATTEST

*that:*

*A diligent search has this day been made of the records and files of this Commission and the records and files do not disclose that any filings have been received in this Commission, under the name of Bear Stearns Asset-Backed Securities, Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2, pursuant to the provisions of any of the Acts administered by the Commission.  We have previously provided you with a copy of the Pooling and Servicing Agreement for Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2.*

on file in this Commission

August 6, 2013
*Date*

Larry Mills, Management and Program Analyst

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, DC, which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or anyone of them, are authorized to execute the above attestation.

For the Commission

Elizabeth M. Murphy
Secretary

# State of California
## Secretary of State

### Certificate of No Record
### Corporation

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the Corporations Code of the State of California provides for the preparation and execution of Articles of Incorporation and their filing in the office of the Secretary of State in order to incorporate a California corporation; and

That the Corporations Code of the State of California provides for the filing in the office of the Secretary of State of a Statement and Designation and a Certificate of Good Standing (certified copy of Articles or Certificate of Incorporation as to a corporation qualified prior to September 18, 1959) in order to qualify a foreign corporation to transact intrastate business in this State.

I further certify that a diligent search has been made in the corporate files of this office and that there is no record of a California or foreign corporation, active or inactive, of the name: **PRO 30 FUNDING**

**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of February 15, 2013.



**DEBRA BOWEN**
Secretary of State

NP

THIS LICENSE MUST BE CONSPICUOUSLY POSTED AT LOCATION HEREIN PROVIDED SPINC'E

## Department of Corporations
### State of California

# License

### FINANCE LENDER AND BROKER

**File No: 605 3564**

PRO30 FUNDING (ENMM, INC.,
DBA)

_____

_____

PURSUANT TO, AND IN COMPLIANCE WITH, THE CALIFORNIA FINANCE LENDERS LAW:

I, THE UNDERSIGNED, AS COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, DO HEREBY ISSUE THIS LICENSE TO THE ABOVE NAMED CORPORATION

INCORPORATED AUGUST 18, 2004, IN THE STATE OF CALIFORNIA TO ENGAGE IN THE BUSINESS OF "FINANCE LENDER" AND "BROKER" AS DEFINED IN SAID LAW, AT THE FOLLOWING LOCATION:

88 ROWLAND WAY
NOVATO, CALIFORNIA 94945

TO CONTINUE IN EFFECT UNTIL SURRENDERED, SUSPENDED, OR REVOKED AS PROVIDED BY LAW.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY OFFICIAL SEAL ON THE DATE APPEARING BELOW.

**PRESTON DUFAUCHARD**

Date     August 15, 2006

California Corporations Commissioner

BY

PATRICIA R. SPEIGHT
Special Administrator
California Finance Lenders Law

### THIS LICENSE IS NOT TRANSFERABLE OR ASSIGNABLE

143308

Recording Requested By:
PRO30 FUNDING

And After Recording Return To:
PRO30 FUNDING
88 ROWLAND WAY, SUITE 200
NOVATO, CALIFORNIA 94945
Loan Number: 318697



San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC— 2005-I102707-00
Acct 11-FIDELITY NATIONAL Title Company
Thursday, DEC 29, 2005 15:00:13
Ttl Pd   $87.00      Nbr-0002911899
REEL J048 IMAGE 0650
                              081/FT/1-27

11 High St. #201
33 12849

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

**MIN:** 1001719~0512000855-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  DECEMBER 20, 2005      , together with all Riders to this document.
(B) "Borrower" is CLYDE NATHAN SMITH, A SINGLE MAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is PRO30 FUNDING

Lender is a CALIFORNIA CORPORATION                                    organized
and existing under the laws of  CALIFORNIA
Lender's address is 88 ROWLAND WAY, SUITE 200, NOVATO, CALIFORNIA 94945

(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY
50 CALIFORNIA STREET, STE. 3145, SAN FRANCISCO, CALIFORNIA 94111

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  DECEMBER 20, 2005      .
The Note states that Borrower owes Lender EIGHT HUNDRED THIRTY-THREE THOUSAND TWO HUNDRED FIFTY AND 00/100         Dollars (U.S. $ 833,250.00      ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic ℰℱℴℛℳ⒮ 800-649-1362
Form 3005 01/01                                   Page 1 of 14                         www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**JANUARY 1, 2036**
(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER TO SECURITY INST |

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M) "**Escrow Items**" means those items that are described in Section 3.
(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the
                COUNTY   of       SAN FRANCISCO          :
       [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: LOT 33 BLK 2849

which currently has the address of  11 HIGH STREET #201
                                                        [Street]

                SAN  FRANCISCO              , California  94114       ("Property Address"):
                     [City]                              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the · state hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic ☎800-649-1362
Form 3005 01/01                          Page 3 of 14                                 www.docmagic.com

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note. until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic ERorms* 800-649-1362
Form 3005 01/01                          Page 4 of 14                                www.docmagic.com

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 5 of 14

*DocMagic* ☎️800-649-1362
www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 6 of 14                                    DocMagic ⟨⟩ 800-649-1362
                                                                                              www.docmagic.com

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

Comment:

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess; if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic eForms 800-649-1362
Form 3005 01/01      Page 8 of 14      www.docmagic.com

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     *DocMagic* 800-649-1362
Form 3005 01/01                          Page 9 of 14                            www.docmagic.com

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic ℰℱℴℛℳℨ 800-649-1362
Form 3005 01/01                                Page 12 of 14                              www.docmagic.com

SAN FRANCISCO,CA                               Page 12 of 27                              Printed on 4/3/2013 11:13:00 PM
Document: TD 2005.102707

Branch :F7I,User :TZ01                    Comment:                                        Station Id :PCEF

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

X _____ (Seal)          _____ (Seal)
CLYDE NATHAN SMITH          -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower


Witness:                                    Witness:

_____              _____


CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       DocMagic €Forms 800-649-1362
Form 3005 01/01                         Page 13 of 14                              www.docmagic.com

State of California                    )
                                       ) ss.
County of  SAN FRANCISCO               )

    On    /2 · 2/-05          before me,   C.Madrid-Garibaldi

personally appeared  CLYDE NATHAN SMITH

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                        _____
                                        NOTARY SIGNATURE

                                        C. Madrid-Garibaldi
                                        (Typed Name of Notary)

        NOTARY SEAL



CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eFormz 800-649-1362
Form 3005 01/01                              Page 14 of 14                            www.docmagic.com

Branch :F7I,User :TZ01                     Comment:                                    Station Id :PCEF

Loan Number: 318697

Date: DECEMBER 20, 2005

Property Address: 11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114

## EXHIBIT "A"

### LEGAL DESCRIPTION

A.P.N. # : LOT 33 BLK 2849

DocMagic eForms 800-649-1362
www.docmagic.com

Escrow No.: 05-143308-CG
Locate No.: CAFNT0938-0938-0014-0000143308
Title No.: 05-143308-JJ

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

Condominium Unit No. 201, Lot No. 33, as shown upon the Condominium Map and diagrammatic floor plan entitled "Map of No. 11 High Street, a Condominium" which was filed for record on February 21, 1979 in Condominium Map Book 10, at Pages 92 through 97, inclusive, in the Office of the Recorder of the City and County of San Francisco, State of California (referred to herein as "the Map"), and as further defined in the No. 11 High Street Declaration of Covenants, Conditions and Restrictions Establishing a Plan of Condominium Ownership recorded on February 28, 1979 in Book C734, Page 176 and following, Official Records of the City and County of San Francisco, State of California (referred to herein as "the Declaration").

Excepting therefrom, any portion of the common area lying within said Unit.

Also excepting therefrom:

(a) Easements through said Unit, appurtenant to the Common Area and all other Units, for support and repair of the common area and all other units.

(b) Easements, appurtenant to the common area for encroachment upon the air space of the Unit by those portions of the common area located within the Unit.

PARCEL B:

An undivided 0.125% interest in and to the Common Area as shown on the Map and defined in the Declaration, excepting therefrom the following:

(a) Exclusive easements, other that those shown in Parcel "C" herein, as shown on the Map and excepting by Grantor to units for use as defined in the Declaration and

(b) Non-exclusive easements appurtenant to all units for ingress and egress, support, repair and maintenance.

PARCEL C:

The following easements appurtenant to Parcel A above as set forth and defined in the Declaration:

(a) The exclusive easement to use the Balcony area(s) designated as Balcony 201 on the Map.

PARCEL D:

A non-exclusive easement appurtenant to Parcel A above for support, repair and maintenance, and for ingress and egress through the Common Area in accordance with California Civil Code Section 1361(a).

PARCEL E:

Encroachment easements appurtenant to the Unit in accordance with the provisions of the Declaration.

Exhibit Page - Legal(exhibit)(8-02)

Loan Number: 318697

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 20th day of DECEMBER, 2005 .
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to PRO30 FUNDING, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 1 of 3

DocMagic €Partner 800-649-1362
www.docmagic.com

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 2 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)                    _____ (Seal)
CLYDE NATHAN SMITH        -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                              Page 3 of 3

DocMagic €Faroms 800-649-1362
www.docmagic.com

MIN: 1001719-0512000855-3                    Loan Number: 318697

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
### - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 20th day of DECEMBER, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to PRO30 FUNDING, A CALIFORNIA
CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

### A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      7.500 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)   Change Dates
The interest rate I will pay may change on the 1st   day of JANUARY, 2011
and on that day every 6th  month thereafter. Each date on which my interest rate could change is called
a "Change Date."
(B)   The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)    .
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                        Page 1 of 3

DocMagic *eRunas* 800-649-1362
www.docmagic.com

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.500 % or less than 2.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 12.500 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                  Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)                    _____ (Seal)
CLYDE NATHAN SMITH        -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                          -Borrower                                        -Borrower


_____ (Seal)                    _____ (Seal)
                          -Borrower                                        -Borrower


MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 3 of 3

*DocMagic* 800.649.1362
*www.docmagic.com*

Loan Number: 318697

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 20th day of DECEMBER, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to PRO30 FUNDING, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

HIGH STREET
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

B.  Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards, including,
but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for
property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property
insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                    Page 1 of 3

DocMagic ℰℱℴℛℳℨ 800-649-1362
www.docmagic.com

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                                    Page 2 of 3

DocMagic ᴇℱ₥₥₥₥ 800-649-1362
www.docmagic.com

Branch :F7I,User :TZ01                      Comment:                                      Station Id :PCEF

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)                    _____ (Seal)
CLYDE NATHAN SMITH          -Borrower                                       -Borrower


_____ (Seal)                    _____ (Seal)
                            -Borrower                                       -Borrower


_____ (Seal)                    _____ (Seal)
                            -Borrower                                       -Borrower


MULTISTATE CONDOMINIUM RIDER
Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01                              Page 3 of 3

DocMagic *eRunner* 800-649-1362
www.docmagic.com

# PREPAYMENT RIDER

Loan Number: 318697

Date: DECEMBER 20, 2005

Borrower(s): CLYDE NATHAN SMITH

 

    THIS PREPAYMENT RIDER (the "Rider") is made this 20th day of DECEMBER
2005                            , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
PRO30 FUNDING, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

      11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114
                    [Property Address]

    ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

    **5   .   BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
    I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
    The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
    If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase. If this Note provides for a variable interest rate or finance
charge, and the interest rate or finance charge at any time exceeds the legal limit under

---

MULTISTATE PREPAYMENT RIDER
6/03                                    Page 1 of 2                    DocMagic eFevmma 800-649-1362
                                                                      www.docmagic.com

which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within SEVEN      ( 7     ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX      ( 6     ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)            _____ (Seal)
CLYDE NATHAN SMITH      -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                       -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                       -Borrower                                   -Borrower


MULTISTATE PREPAYMENT RIDER
6/03                              Page 2 of 2             DocMagic EForms 800-649-1362
                                                         www.docmagic.com

143308

**Recording Requested By:**
PRO30 FUNDING
88 ROWLAND WAY, SUITE 200
NOVATO, CALIFORNIA 94945

**And After Recording Return To:**
PRO30 FUNDING
88 ROWLAND WAY, SUITE 200
NOVATO, CALIFORNIA 94945
Loan Number: 318698

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2005-I102708-00
Acct 11-FIDELITY NATIONAL Title Company
Thursday, DEC 29, 2005 15:00:19
Ttl Pd $54.00          Nbr-0002911906
REEL J046 IMAGE 0551
                       001/FT/1-16

33 / 2849
11 High St. #201

—————————————[Space Above This Line For Recording Data]—————————————

# DEED OF TRUST

**MIN:** 1001719-0512000856-1

THIS DEED OF TRUST is made this 20th day of DECEMBER, 2005          among the Trustor,
CLYDE NATHAN SMITH, A SINGLE MAN

(herein "Borrower").

FIDELITY NATIONAL TITLE COMPANY, 50 CALIFORNIA STREET, STE.
3145, SAN FRANCISCO, CALIFORNIA 94111          (herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
PRO30 FUNDING, A CALIFORNIA CORPORATION
is organized and existing under the laws of  CALIFORNIA          and has an address of
88 ROWLAND WAY, SUITE 200, NOVATO, CALIFORNIA 94945

(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
SAN FRANCISCO          , State of California:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: LOT 33, BLOCK 2849

THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST
LIEN(S) OF RECORD.
which has the address of 11 HIGH STREET #201

                              [Street]
SAN FRANCISCO          , California   94114          (herein "Property Address");
[City]                               [Zip Code]

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 1 of 7          DocMagic eFarms 800-649-1362
                                                              www.docmagic.com

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property"; Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated DECEMBER 20, 2005       and extensions and renewals thereof(herein "Note"), in the principal sum of TWO HUNDRED TWENTY-TWO THOUSAND TWO HUNDRED AND 00/100 Dollars (U.S. $ 222,200.00      ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  JANUARY 1, 2036     ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2.  **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution).  Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

    **3.  Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

    **4.  Prior Mortgages and Deeds of Trust; Charges; Liens.**  Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due.  Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

    **5.  Hazard Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

    The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender.  Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

    In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

    If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

    **6.  Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.**  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold.  If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

    **7.  Protection of Lender's Security.**  If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest.  If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

    Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

    **8.  Inspection.**  Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

    **9.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 3 of 7                    DocMagic   800-649-1362
                                                                        www.docmagic.com

SAN FRANCISCO,CA                       Page 3 of 16                      Printed on 4/3/2013 11:13:11 PM
Document: TD 2005.102708

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 · AS AMENDED FOR MERS      Page 4 of 7      DocMagic ☎ 800-649-1362
www.docmagic.com

by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                 Page 5 of 7                   DocMagic €Ffarīḍós 800-649-1362
                                                                             www.docmagic.com

Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. **Statement of Obligations.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

24. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER |
| | | TO SECURITY INST |

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                                        , in Book

Page             , records of                                    County, (or filed for record with recorder's

serial number            .                                          County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to

at

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                    Page 6 of 7                    DocMagic ℰℱℴℛℳℱ 800-649-1362
                                                                                  www.docmagic.com

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_____
CLYDE NATHAN SMITH        -Borrower                    _____ -Borrower

_____ -Borrower                    _____ -Borrower

_____ -Borrower                    _____ -Borrower

State of California
County of  SAN FRANCISCO

On  $12-21-05$                    before me,  C Madrid-Garibaldi

personally appeared CLYDE NATHAN SMITH

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

(Seal)

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                Page 7 of 7                DocMagic €Fsmas  800-649-1362
                                                                                                www.docmagic.com

Loan Number: 318698

Date: DECEMBER 20, 2005

Property Address: 11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : LOT 33, BLOCK 2849

DocMagic €€/ormans 800-649-1362
www.docmagic.com

Escrow No.: 05-143308-CG
Locate No.: CAFNT0938-0938-0014-0000143308
Title No.: 05-143308-JJ

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

Condominium Unit No. 201, Lot No. 33, as shown upon the Condominium Map and diagrammatic floor plan entitled "Map of No. 11 High Street, a Condominium" which was filed for record on February 21, 1979 in Condominium Map Book 10, at Pages 92 through 97, inclusive, in the Office of the Recorder of the City and County of San Francisco, State of California (referred to herein as "the Map"), and as further defined in the No. 11 High Street Declaration of Covenants, Conditions and Restrictions Establishing a Plan of Condominium Ownership recorded on February 28, 1979 in Book C734, Page 176 and following, Official Records of the City and County of San Francisco, State of California (referred to herein as "the Declaration").

Excepting therefrom, any portion of the common area lying within said Unit.

Also excepting therefrom:

(a) Easements through said Unit, appurtenant to the Common Area and all other Units, for support and repair of the common area and all other units.

(b) Easements, appurtenant to the common area for encroachment upon the air space of the Unit by those portions of the common area located within the Unit.

PARCEL B:

An undivided 0.125% interest in and to the Common Area as shown on the Map and defined in the Declaration, excepting therefrom the following:

(a) Exclusive easements, other that those shown in Parcel "C" herein, as shown on the Map and excepting by Grantor to units for use as defined in the Declaration and

(b) Non-exclusive easements appurtenant to all units for ingress and egress, support, repair and maintenance.

PARCEL C:

The following easements appurtenant to Parcel A above as set forth and defined in the Declaration:

(a) The exclusive easement to use the Balcony area(s) designated as Balcony 201 on the Map.

PARCEL D:

A non-exclusive easement appurtenant to Parcel A above for support, repair and maintenance, and for ingress and egress through the Common Area in accordance with California Civil Code Section 1361(a).

PARCEL E:

Encroachment easements appurtenant to the Unit in accordance with the provisions of the Declaration.

Exhibit Page - Legal(exhibit)(8-02)

Loan Number: 318698

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this    20th    day of   DECEMBER
2005      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust
or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to PRO3O FUNDING, A CALIFORNIA CORPORATION

(the "Lender")
of the same date and covering the property described in the Security Instrument and located at:
11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the
Property described in the Security Instrument, the following items are added to the Property description, and shall
also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every
nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers,
awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets,
panelling and attached floor coverings now or hereafter attached to the Property, all of which, including
replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the
Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the
leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the
Security Instrument as the "Property".

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make
a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change.
Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable
to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the
other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first
sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining
covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases
of the Property and all security deposits made in connection with leases of the Property. Upon the assignment,
Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's
sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is
on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**
Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the
Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's
agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's
agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant

Case 3:14-cv-02030-JST   Document 1   Filed 05/02/14   Page 64 of 82

to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_X_ _(signature)_ _____ (Seal)          _____ (Seal)
CLYDE NATHAN SMITH        Borrower                              Borrower

_____ (Seal)        _____ (Seal)
                          Borrower                              Borrower

_____ (Seal)        _____ (Seal)
                          Borrower                              Borrower

MULTISTATE 1-4 FAMILY RIDER - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT          FORM 3170 9/90
Document Systems, Inc. (800) 649-1362                      Page 2 of 2

# PREPAYMENT RIDER

Loan Number: 318698

Date: DECEMBER 20, 2005

Borrower(s): CLYDE NATHAN SMITH


THIS PREPAYMENT RIDER (the "Rider") is made this 20th day of DECEMBER
2005                              , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
PRO30 FUNDING, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

    11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114
                                    [Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**6   .  BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase. If this Note provides for a variable interest rate or finance
charge, and the interest rate or finance charge at any time exceeds the legal limit under

MULTISTATE PREPAYMENT RIDER
6/03                                        Page 1 of 2                    *DocMagic EForms*  800-649-1362
                                                                              www.docmagic.com

which a Prepayment penalty is allowed, then the Note Holder's right to assess a
Prepayment penalty will be determined under applicable law.

If within SEVEN         ( 7    ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds twenty percent (20%)
of the original Principal amount of the loan, I will pay a Prepayment charge in an amount
equal to SIX         ( 6    ) months' advance interest on the amount by which
the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of
the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Rider.

_____ (Seal)            _____ (Seal)
CLYDE NATHAN SMITH        -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                   -Borrower

MULTISTATE PREPAYMENT RIDER
6/03                                   Page 2 of 2               DocMagic €Rams 800-649-1362
                                                                www.docmagic.com

Loan Number: 318698

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 20th day of DECEMBER, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to PRO30 FUNDING, A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

11 HIGH STREET #201, SAN FRANCISCO, CALIFORNIA 94114
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
HIGH STREET
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or
any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv)
other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender
requires, including fire and hazards included within the term "extended coverage," then:

    (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of
        one-twelfth of the yearly premium installments for hazard insurance on the Property; and
    (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on
        the Property is deemed satisfied to the extent that the required coverage is provided by the
        Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following
a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument,
with any excess paid to Borrower.

MULTISTATE CONDOMINIUM RIDER - Single Family                      DocMagic €Rarmms 800-649-1362
FNMA/FHLMC UNIFORM INSTRUMENT                                     www.docmagic.com
Form 3140 9/80                         Page 1 of 3

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

    (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

    (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

    (iii)    termination of professional management and assumption of self-management of the Owners Association; or

    (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3140 9/90                          Page 2 of 3

DocMagic *℮Forms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)   _____ (Seal)
CLYDE NATHAN SMITH  -Borrower        -Borrower


_____ (Seal)   _____ (Seal)
        -Borrower        -Borrower


_____ (Seal)   _____ (Seal)
        -Borrower        -Borrower

MULTISTATE CONDOMINIUM RIDER - Single Family
FNMA/FHLMC UNIFORM INSTRUMENT
Form 3140  9/90       Page 3 of 3

DocMagic *eFarms* 800-649-1362
www.docmagic.com



# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

I HEREBY ATTEST

*that:*

*Attached is a copy of Form 8-K, current report, dated March 1, 2006, received in this Commission on October 10, 2006, under the name Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2 (Structured Asset Mortgage Investments II, Inc., as depositor), File No. 333-125422-48, pursuant to the provisions of the Securities Exchange Act of 1934.*

on file in this Commission

July 22, 2013
_____
Date

_____
Curt Francisco, Branch Chief

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, DC, which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or anyone of them, are authorized to execute the above attestation.

For the Commission

*Elizabeth M. Murphy*
Secretary

## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 8-K

## CURRENT REPORT
**Pursuant to Section 13 OR 15(d) of
The Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): March 1, 2006

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC (as company under an Amended and Restated Pooling and Servicing Agreement dated as of October 6, 2006 providing for, inter alia, the issuance of Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2006-2)

(Exact name of registrant as specified in its charter)

| Delaware | 333-113636 | 30-0183252 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 383 Madison Avenue New York, New York | 10179 |
|---|---|
| (Address of principal executive office) | (Zip Code) |

212-272-2000

(Registrant's telephone number, including area code )

N/A

(Former name or address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communication pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2 (b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4 (c))

Items 1 through 7 are not included because they are not applicable.

Item 8.01. Other Events.

On March 1, 2006, Structured Asset Mortgage Investments II Inc. caused the issuance and sale of the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-1, pursuant to a Pooling and Servicing Agreement, dated as of March 1, 2006, among Bear Stearns Asset Backed Securities I LLC., as depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, EMC Mortgage Corporation, as seller, and JPMorgan Chase Bank, National Association., as trustee.

On October 6, 2006 the parties executed an Amended and Restated Pooling and Servicing Agreement, dated as of October 6, 2006, among tructured Asset Mortgage Investments II Inc., as depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, EMC Mortgage Corporation, as seller, and Bank of New York as successor to JPMorgan Chase Bank, National Association, as trustee

Item 9.01.          Financial Statements and Exhibits.

     (a)          Not applicable

     (b)          Not applicable

     (c)          Exhibits (executed copies): The following execution copies of Exhibits to the Form S-3 Registration Statement of the Registrant are hereby filed:

| Exhibit Number | Sequentially Numbered Exhibit Page |
|---|---|

10.1     Amended and Restated Pooling and Servicing Agreement, dated as of October 6, 2006 among tructured Asset Mortgage Investments II Inc., as depositor, Wells Fargo Bank, National Association, as master servicer and securities administrator, EMC Mortgage Corporation, as seller, and Bank of New York as successor to JPMorgan Chase Bank, National Association, as trustee

3

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on behalf of the Registrant by the undersigned thereunto duly authorized.

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.

By:_____ **/s/ Baron Silverstein**_____
Name: Baron Silverstein
Title:  Vice President

Dated: October [_], 2006

EXHIBIT INDEX

<u>Exhibit Number</u>

<u>Description</u>

10.1

Amended and Restated Pooling and Servicing Agreement

5

EXHIBIT 1

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.,
DEPOSITOR

BANK OF NEW YORK AS SUCCESSOR TO
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
TRUSTEE

WELLS FARGO BANK, NATIONAL ASSOCIATION,
MASTER SERVICER AND SECURITIES ADMINISTRATOR

and

EMC MORTGAGE CORPORATION
SPONSOR AND COMPANY

---

AMENDED AND RESTATED POOLING AND SERVICING AGREEMENT

Dated as of October 6, 2006

---

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.,
Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates

Series 2006-2

ARTICLE I
DEFINITIONS

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.  Conveyance of Mortgage Loans to Trustee.....................................................59
Section 2.02.  Acceptance of Mortgage Loans by Trustee.....................................................61
Section 2.03.  Assignment of Interest in the Mortgage Loan Purchase Agreement.............................63
Section 2.04.  Substitution of Mortgage Loans..............................................................66
Section 2.05.  Issuance of Certificates....................................................................66
Section 2.06.  Representations and Warranties Concerning the Depositor.....................................67
Section 2.07.  [Reserved]..................................................................................68
Section 2.08.  Purposes and Powers of the Trust............................................................68

ARTICLE III
ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01.  Master Servicer.............................................................................70
Section 3.02.  REMIC-Related Covenants.....................................................................71
Section 3.03.  Monitoring of Servicers.....................................................................71
Section 3.04.  Fidelity Bond...............................................................................73
Section 3.05.  Power to Act; Procedures....................................................................73
Section 3.06.  Due-on-Sale Clauses; Assumption Agreements..................................................74
Section 3.07.  Release of Mortgage Files...................................................................74
Section 3.08.  Documents, Records and Funds in Possession of Master Servicer To Be Held for
               Trustee.....................................................................................75
Section 3.09.  Standard Hazard Insurance and Flood Insurance Policies......................................76
Section 3.10.  Presentment of Claims and Collection of Proceeds...........................................76
Section 3.11.  Maintenance of the Primary Mortgage Insurance Policies......................................76
Section 3.12.  Trustee to Retain Possession of Certain Insurance Policies and Documents....................77
Section 3.13.  Realization Upon Defaulted Mortgage Loans...................................................77
Section 3.14.  Compensation for the Master Servicer........................................................77
Section 3.15.  REO Property................................................................................77
Section 3.16.  Annual Statement as to Compliance...........................................................78
Section 3.17.  Assessments of Compliance and Attestation Reports..........................................79
Section 3.18.  Reports Filed with Securities and Exchange Commission.......................................81
Section 3.19.  The Company.................................................................................91
Section 3.20.  UCC.........................................................................................91
Section 3.21.  Optional Purchase of Defaulted Mortgage Loans...............................................91
Section 3.22.  [Reserved]..................................................................................92
Section 3.23.  Intention of the Parties and Interpretation................................................92

ARTICLE IV
ACCOUNTS

Section 4.01.  Protected Accounts..........................................................................93
Section 4.02.  [Reserved]..................................................................................94
Section 4.03.  [Reserved]..................................................................................94
Section 4.04.  Distribution Account........................................................................94
Section 4.05.  Permitted Withdrawals and Transfers from the Distribution Account...........................97
Section 4.06.  Reserve Fund................................................................................99
Section 4.07.  Class XP Reserve Account....................................................................100
Section 4.08.  Cap Reserve Account.........................................................................100

ARTICLE V
CERTIFICATES

Section 5.01.  Certificates................................................................................102
Section 5.02.  Registration of Transfer and Exchange of Certificates.......................................111
Section 5.03.  Mutilated, Destroyed, Lost or Stolen Certificates..........................................115
Section 5.04.  Persons Deemed Owners.......................................................................115
Section 5.05.  Transfer Restrictions on Residual Certificates..............................................115

Section 5.06.   Restrictions on Transferability of Certificates...........................................116
Section 5.07.   ERISA Restrictions......................................................................117
Section 5.08.   Rule 144A Information...................................................................118

ARTICLE VI
PAYMENTS TO CERTIFICATEHOLDERS

Section 6.01.   Distributions on the Group I Certificates...............................................119
Section 6.02.   Distributions on the Group II Certificates..............................................122
Section 6.03.   Allocation of Losses and Subsequent Recoveries on the Group I Certificates..............128
Section 6.04.   Allocation of Losses and Subsequent Recoveries on the Group II Certificates.............129
Section 6.05.   Cross-Collateralization................................................................131
Section 6.06.   Payments...............................................................................132
Section 6.07.   Statements to Certificateholders.......................................................132
Section 6.08.   Monthly Advances.......................................................................135
Section 6.09.   Compensating Interest Payments.........................................................136
Section 6.10.   Distributions on REMIC Regular Interests...............................................136

ARTICLE VII
THE MASTER SERVICER

Section 7.01.   Liabilities of the Master Servicer.....................................................137
Section 7.02.   Merger or Consolidation of the Master Servicer.........................................137
Section 7.03.   Indemnification of the Trustee, the Master Servicer and the Securities
              Administrator......................................................................137
Section 7.04.   Limitations on Liability of the Master Servicer and Others.............................137
Section 7.05.   Master Servicer Not to Resign..........................................................139
Section 7.06.   Successor Master Servicer..............................................................139
Section 7.07.   Sale and Assignment of Master Servicing................................................139

ARTICLE VIII
DEFAULT

Section 8.01.   Events of Default......................................................................141
Section 8.02.   Successor to Act; Appointment of Successor.............................................143
Section 8.03.   Notification to Certificateholders.....................................................144
Section 8.04.   Waiver of Defaults.....................................................................144
Section 8.05.   List of Certificateholders.............................................................145

ARTICLE IX
CONCERNING THE TRUSTEE AND THE SECURITIES ADMINISTRATOR

Section 9.01.   Duties of Trustee and Securities Administrator.........................................146
Section 9.02.   Certain Matters Affecting the Trustee and the Securities Administrator..................148
Section 9.03.   Trustee and Securities Administrator Not Liable for Certificates or Mortgage Loans......149
Section 9.04.   Trustee and Securities Administrator May Own Certificates..............................150
Section 9.05.   Trustee's and Securities Administrator's Fees and Expenses.............................150
Section 9.06.   Eligibility Requirements for Trustee and Securities Administrator......................151
Section 9.07.   Insurance..............................................................................151
Section 9.08.   Resignation and Removal of the Trustee and Securities Administrator....................151
Section 9.09.   Successor Trustee and Successor Securities Administrator...............................152
Section 9.10.   Merger or Consolidation of Trustee or Securities Administrator.........................153
Section 9.11.   Appointment of Co-Trustee or Separate Trustee..........................................153
Section 9.12.   Federal Information Returns and Reports to Certificateholders; REMIC Administration.....154

ARTICLE X
TERMINATION

Section 10.01.   Termination Upon Repurchase by EMC or its Designee or Liquidation of the Mortgage
              Loans..............................................................................157
Section 10.02.   Additional Termination Requirements....................................................160

ARTICLE XI
MISCELLANEOUS PROVISIONS

Section 11.01.   Intent of Parties......................................................................161
Section 11.02.   Amendment..............................................................................161
Section 11.03.   Recordation of Agreement...............................................................162
Section 11.04.   Limitation on Rights of Certificateholders.............................................162
Section 11.05.   Acts of Certificateholders.............................................................163
Section 11.06.   Governing Law..........................................................................164
Section 11.07.   Notices................................................................................164
Section 11.08.   Severability of Provisions.............................................................165
Section 11.09.   Successors and Assigns.................................................................165
Section 11.10.   Article and Section Headings...........................................................165
Section 11.11.   Counterparts...........................................................................165
Section 11.12.   Notice to Rating Agencies..............................................................165
Section 11.13.   Effectiveness of Amended and Restated Pooling and Servicing Agreement..................165


APPENDIX
Appendix 1      -     Calculation of Class Y Principal Reduction Amount

EXHIBITS

Exhibit A-1    -    Form of Class I-A Certificates
Exhibit A-2    -    Form of Class I-M Certificates
Exhibit A-3    -    Form of Class I-B-1 Certificates and Class I-B-2 Certificates
Exhibit A-4    -    Form of Class I-B-3 Certificates
Exhibit A-5-1  -    Form of Class R Certificates
Exhibit A-5-2  -    Form of Class R-X Certificates
Exhibit A-6    -    Form of Class B-IO Certificates
Exhibit A-7.   -    Form of Class I-XP Certificates
Exhibit A-8    -    Form of Class II-A Certificates
Exhibit A-9    -    Form of Class II-X Certificates
Exhibit A-10   -    Form of Class II-B-1, Class II-B-2 and Class II-B-3 Certificates
Exhibit A-11   -    Form of Class II-X-B Certificates
Exhibit A-12   -    Form of Class II-B-4, Class II-B-5 and Class II-B-6 Certificates
Exhibit A-13   -    Form of Class II-XP Certificates
Exhibit B      -    Mortgage Loan Schedule
Exhibit C      -    [Reserved]
Exhibit D      -    Request for Release of Documents
Exhibit E      -    Form of Affidavit pursuant to Section 960E(e)(4)
Exhibit F-1    -    Form of Investment Letter

| Exhibit F-2 | - | Form of Rule 144A and Related Matters Certificate |
| Exhibit F-3 | - | Form of Transferor Representation Letter |
| Exhibit G | - | Form of Amended and Restated Custodial Agreement |
| Exhibit H-1 | - | Countrywide Servicing Agreement |
| Exhibit H-2 | - | EMC Servicing Agreement |
| Exhibit H-3 | - | EverHome Servicing Agreement |
| Exhibit H-4 | - | Harbourside Servicing Agreement |
| Exhibit H-5 | - | HomeBanc Servicing Agreement |
| Exhibit H-6 | - | HSBC Servicing Agreement |
| Exhibit H-7 | - | PHH Servicing Agreement |
| Exhibit H-8 | - | Wachovia Servicing Agreement |
| Exhibit H-9 | - | Waterfield Servicing Agreement |
| Exhibit H-10 | - | Wells Fargo Servicing Agreement |
| Exhibit I | - | Assignment Agreements |
| Exhibit J | - | Form of Mortgage Loan Purchase Agreement |
| Exhibit K | - | [Reserved] |
| Exhibit L | - | [Reserved] |
| Exhibit M | - | Servicing Criteria to Be Addressed in Assessment of Compliance |
| Exhibit N | - | Form of Back-Up Certification |
| Exhibit O | - | Form of Trustee Limited Power of Attorney |
| Exhibit P | - | Form of Cap Contracts |
| Exhibit Q | - | Form 10-D, Form 8-K and Form 10-K Reporting Responsibility |
| Exhibit R | - | Additional Disclosure Information |
| Exhibit S | - | Form of Securities Administrator Back-Up Certification |

## AMENDED AND RESTATED POOLING AND SERVICING AGREEMENT

WHEREAS, a Pooling and Servicing Agreement, dated as of March 1, 2006 (the "Pooling and Servicing Agreement"), relating to the issuance of Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-2, was entered into by and among the parties hereto;

WHEREAS, the parties hereto desire to make certain amendments, changes and modifications to such Pooling and Servicing Agreement;

WHEREAS, pursuant to Section 11.02 of the Pooling and Servicing Agreement, such Pooling and Servicing Agreement is hereby amended and restated in its entirety effective as of the Closing Date in order to make such amendments, changes and modifications as are set for the herein;

NOW, THEREFORE, in consideration of the mutual agreements herein contained, the parties hereto hereby agree as follows:

Amended and Restated Pooling and Servicing Agreement dated as of October 6, 2006, among Structured Asset Mortgage Investments II Inc., a Delaware limited liability company, as depositor (the "Depositor"), Bank of New York as successor to JPMorgan Chase Bank, National Association, a banking association organized under the laws of the United States, not in its individual capacity but solely as trustee (the "Trustee"), Wells Fargo Bank, National Association, as master servicer (in such capacity, the "Master Servicer") and as securities administrator (in such capacity, the "Securities Administrator"), and EMC Mortgage Corporation, as sponsor (in such capacity, the "Sponsor") and as company (in such capacity, the "Company").

### PRELIMINARY STATEMENT

On or prior to the Closing Date or a Subsequent Transfer Date, in the case of Subsequent Transfer Loans, the Depositor acquired the Mortgage Loans from the Sponsor. On the Closing Date, the Depositor will sell the Mortgage Loans and certain other property to the Trust Fund and receive in consideration therefor Certificates evidencing the entire beneficial ownership interest in the Trust Fund.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC I to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC I Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC II to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC II Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC III to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC III Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC IV to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC IV Regular Interests will be designated "regular interests" in such REMIC.

The Securities Administrator on behalf of the Trustee shall make an election for the assets constituting REMIC V to be treated for federal income tax purposes as a REMIC. On the Startup Day, the REMIC V Regular Interest will be designated the "regular interest" in such REMIC.

The Class R Certificates will evidence ownership of the "residual interest" in each of REMIC I, REMIC II, REMIC III and REMIC IV. The Class R-X Certificates will evidence ownership of the "residual interest" in REMIC V.

The Group I-1 Loans will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $671,932,306. The Sub-Loan Group II-1 Loans will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $98,646,361. The Sub-Loan Group II-2 Mortgage Loans will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $504,515,693. The Sub-Loan Group II-3 Mortgage Loans will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $258,405,410. The Sub-Loan Group II-4 Mortgage Loans will have an Outstanding Principal Balance as of the Cut-off Date, after deducting all Scheduled Principal due on or before the Cut-off Date, of $116,754,970.

In consideration of the mutual agreements herein contained, the Depositor, the Master Servicer, the Securities Administrator, the Sponsor, the Company and the Trustee agree as follows:

### ARTICLE I
### Definitions

Whenever used in this Agreement, the following words and phrases, unless otherwise expressly provided or unless the context otherwise requires, shall have the meanings specified in this Article.

| | | | | | | |
|---|---|---|---|---|---|---|
| 156000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 214400 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 204000 | 20060201 | 45.43999863 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 531200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 189120 | 20051001 | 79.05999756 | No MI | 1.00E+17 | 2.25 | 20100901 |
| 140483 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 184065 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 418424 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 471300 | 20060201 | 79.98999786 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 300000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 137600 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 143337 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 193200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 131200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 163340 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 147408 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 833250 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 101600 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 200000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 202800 | 20051201 | 80 | No MI | 1.00E+17 | 2.25 | 20101101 |
| 197052 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 134925 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 147856 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 257085 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 256000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 96720 | 20051001 | 79.27999878 | No MI | 1.00E+17 | 2.25 | 20100901 |
| 518000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 146000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 420000 | 20060101 | 77.05999756 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 289152 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 129144 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 230704 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 63750 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 167200 | 20051201 | 80 | No MI | 1.00E+17 | 2.25 | 20101101 |
| 433600 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 432000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 291200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 423200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 155250 | 20060201 | 75 | No MI | | 2.25 | 20110101 |
| 78650 | 20060201 | 68.98999786 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 182800 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 116800 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 224000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 468164 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 94160 | 20060301 | 80 | No MI | 1.00E+17 | 2.25 | 20110201 |
| 170400 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 103200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 127693 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 82400 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 201028 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 57750 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 148785 | 20060201 | 65 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 425050 | 20060201 | 79.98999786 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 204000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 640000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 81922 | 20060101 | 75 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 136000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 267568 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 85425 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 321650 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 176250 | 20060101 | 75 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 258750 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 227500 | 20060201 | 70 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 448000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 262500 | 20060201 | 70 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 160496 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 106400 | 20060101 | 80 | No MI | 1.00E+16 | 2.25 | 20101201 |
| 112800 | 20060101 | 80 | No MI | 1.00E+37 | 2.25 | 20101201 |
| 460000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 575040 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 203200 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 271500 | 20051101 | 75 | No MI | 1.00E+17 | 2.25 | 20101001 |
| 82000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 145765 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 228000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 316000 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 897172 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 259448 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 272864 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 192750 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 308800 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 609600 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 104000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 1500000 | 20051201 | 50 | No MI | | 2.25 | 20101101 |
| 480000 | 20060101 | 80 | No MI | 1.00E+17 | 2.25 | 20101201 |
| 355920 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 110250 | 20060201 | 50 | FMI | 1.00E+17 | 2.25 | 20110101 |
| 268000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 280720 | 20050901 | 80 | No MI | 1.00E+17 | 2.25 | 20100801 |
| 202500 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 204000 | 20060201 | 80 | No MI | 1000612-0000532532 | 2.25 | 20110101 |
| 196000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 445956 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 420000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 204000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 152000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 130000 | 20060201 | 78.79000092 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 138000 | 20060201 | 75 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 297500 | 20060201 | 70 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 329600 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 112000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 372000 | 20060201 | 80 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 217600 | 20060201 | 80 | No MI | | 2.25 | 20110101 |
| 195000 | 20060201 | 74.43000031 | No MI | 1.00E+17 | 2.25 | 20110101 |
| 143200 | 20051101 | 80 | No MI | 1.00E+17 | 2.25 | 20101001 |
| 204000 | 20051101 | 80 | No MI | 1.00E+17 | 2.25 | 20101001 |
| 283500 | 20051201 | 90 | Republic MIC | 1.00E+17 | 2.25 | 20101101 |



# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION

## ATTESTATION

I HEREBY ATTEST

*that:*

*Attached is a copy of Form 10-K, annual report, for the fiscal year ended December 31, 2006, received in this Commission on March 29, 2007, under the name of Bear Stearns ALT-A Trust 2006-2 (Structured Asset Mortgage Investments II, Inc., as depositor), File No. 333-132232-01, pursuant to the provisions of the Securities Exchange Act of 1934.*

on file in this Commission

July 22, 2013
_____
Date

_____
**Curt Francisco, Branch Chief**

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, DC, which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission, and all records and files created or established by the Federal Trade Commission pursuant to the provisions of the Securities Act of 1933 and transferred to this Commission in accordance with Section 210 of the Securities Exchange Act of 1934, and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or anyone of them, are authorized to execute the above attestation.

For the Commission

*Elizabeth M. Murphy*
Secretary

SEC 334 (9-12)

1

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 10-K

(Mark one)

/X/ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934
For the fiscal year ended December 31, 2006

OR

/ / TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934

Commission file number:  333-132232-01

Bear Stearns ALT-A Trust 2006-2
(exact name of issuing entity as specified in its charter)

Structured Asset Mortgage Investments II Inc.
(exact name of the depositor as specified in its charter)

EMC Mortgage Corporation
(exact name of the sponsor as specified in its charter)

New York                                         54-2196499
(State or other jurisdiction of                  54-2196500
incorporation or organization)                   54-2196501
                                                 54-2196502
                                                 54-2196503
                                                 (I.R.S. Employer
                                                 Identification No.)

c/o Wells Fargo Bank, N.A.
9062 Old Annapolis Road
Columbia, MD                                     21045
(Address of principal executive offices)        (Zip Code)

Registrant's telephone number, including area code: (410) 884-2000

Securities registered pursuant to Section 12(b) of the Act:

    NONE.

Securities registered pursuant to Section 12(g) of the Act:

    NONE.

Indicate by check mark if the registrant is a well-known seasoned issuer,
as defined in Rule 405 of the Securities Act.

    Yes  ___     No  X

Indicate by check mark if the registrant is not required to file reports
pursuant to Section 13 or Section 15(d) of the Act.

    Yes  ___     No  X

Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange
Act of 1934 during the preceding 12 months (or for such shorter period
that the registrant was required to file such reports), and (2) has been
subject to such filing requirements for the past 90 days.

    Yes  X      No  ___

Indicate by check mark if disclosure of delinquent filers pursuant to
Item 405 of Regulation S-K ( 229.405 of this chapter) is not contained
herein, and will not be contained, to the best of registrant's knowledge,
in definitive proxy or information statements incorporated by reference
in Part III of this Form 10-K or any amendment to this Form 10-K.

    Not applicable.

Indicate by check mark whether the registrant is a large accelerated filer,
an accelerated filer, or a non-accelerated filer. See definition of
"accelerated filer and large accelerated filer" in Rule 12b-2 of the
Exchange Act. (Check one):

```
<DOCUMENT>
<TYPE>10-K
<SEQUENCE>1
<FILENAME>bsl06002_10k-2006.txt
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549


FORM 10-K


(Mark one)

/X/ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934
For the fiscal year ended December 31, 2006

OR


/ / TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934


Commission file number:  333-132232-01

Bear Stearns ALT-A Trust 2006-2
(exact name of issuing entity as specified in its charter)

Structured Asset Mortgage Investments II Inc.
(exact name of the depositor as specified in its charter)

EMC Mortgage Corporation
(exact name of the sponsor as specified in its charter)

| New York | 54-2196499 |
|---|---|
| (State or other jurisdiction of | 54-2196500 |
| incorporation or organization) | 54-2196501 |
| | 54-2196502 |
| | 54-2196503 |
| | (I.R.S. Employer |
| | Identification No.) |

| c/o Wells Fargo Bank, N.A. | | |
| 9062 Old Annapolis Road | | |
| Columbia, MD | 21045 | |
| (Address of principal executive offices) | (Zip Code) | |

Registrant's telephone number, including area code: (410) 884-2000